22-2147, United States v. Barnes. Counsel for appellant, if you would make your appearance and proceed, please. Yes, Your Honor. Good morning. I'm Marty Pincus from the Federal Public Defender and I represent Stetson Barnes. I want to focus this morning on the issue of self-defense on the count of carjacking resulting in death. There was proof here both that Mr. Barnes withdrew from the carjacking and that the danger from it had dissipated, so that his right to self-defense was restored. District Court therefore erred in not instructing the jury on self-defense on the carjacking count. The government does not deny that there was evidence that Mr. Barnes communicated his intent to withdraw to Mr. Swenson. Instead, it argues that as a matter of law, Mr. Barnes did not in fact withdraw when Mr. Swenson went back in the house, and that is wrong. Mr. Barnes and Ms. Hedgecock both put their guns away. They seemed largely indifferent on the video to what Mr. Bush was doing, and the jury could easily have found that they were just waiting for Mr. Terrell so that they could leave. Well, the issue isn't whether they were still engaged in violence. The issue is whether they were still engaged in the crime, and the crime here is carjacking, and they hadn't loaded the motorcycle yet, and they stayed there, continued, loaded the motorcycle, and then left. Well, they didn't load—the motorcycle was not loaded at the scene. Mr. Bush— They pushed it down. Well, not they. Mr. Bush pushed the—he tried to start it. Mr. Barnes and Ms. Hedgecock were standing by the truck, occasionally looking at him but mostly not, looking mostly at the carport where Mr. Terrell was. And Mr. Bush eventually pushes—he's unable to start the bike, and he pushes it down the driveway and off the property. Now, Mr. Terrell does at one point come out of the carport on the video and walk over to where Mr. Bush was and is there for about 30 seconds. It's too dark to see what was going on. There's not evidence about what was happening at that point. But he then saunters back and goes kind of towards the truck and then goes back into the carport, stays there for another 20, 30 seconds, finally comes out. By this point, by the time they all get in the truck, Mr. Bush is off the scene, and the motorcycle is off the property. If there was a carjacking going on at that point, which again is when Mr. Swenson opened fire, it was not anything on site. It was not anything done by the people still at the house. It was Mr. Bush who was off the property with the bike, taking the bike, if that is carjacking. Well, they took the bike. It's a taking of the bike. I don't see anything in the statute that requires that your crime all occur at the site. I mean, if you push the car down the road a little bit and then you jump start it and steal it. I mean, how is that different? Well, it may be that it goes on for some time, at least until you, as the government puts it, reach a point of relative safety. There's no indication here that there wasn't a point of relative safety by Mr. Bush at that point. He's off site. We don't have video of what was going on. And certainly to Mr. Swenson, he doesn't know what was going on. And more importantly, Mr. Barnes, Ms. Hedgecock, Mr. Turrell are all still at the scene. And when I said, if this is carjacking, I was referencing our first argument, which we also contend we should get relief on as to both the conspiracy and the substantive count, that one cannot carjack their own car or vehicle or what they in good faith believe to be their own, nor can they do so if they're helping somebody who's retrieving his or her own vehicle or something that that person believes in good faith or the person is helping believes in good faith is that person's vehicle. Well, and you would agree, would you not, that Section 2119 doesn't include, or maybe I need my glasses because I'm reading 2119, that it doesn't include a specific intent like the common law? It does not include an intent to deprive. There's now a specific intent in the carjacking statute, but it's a different specific intent. It's the intent to kill or cause serious bodily injury that the Supreme Court in Holloway said can be a conditional intent. It doesn't contain on its own an intent to deprive the owner of the vehicle of the property. But that flows, and I'll touch on this and then hopefully get back to the self-defense. The notion that it has to be somebody else's vehicle and it has to partake of stealing is reflected in this Court's decision in both Garuli and Payne. In Garuli, this Court identified the conduct for carjacking to be the taking of a vehicle, but when it then later spoke of it, it tied it to the victim's vehicle. It said the prohibited conduct was, quote, acquiring possession or control of the victim's vehicle by force or violence or by intimidation. And Payne is consistent with that. And as a matter of fact, wasn't it the victim's vehicle? It was. All right, then. I mean, were we necessarily stating a proposition of law that has universal application there? I mean, the statute speaks for itself as to what it says. Well, I think this Court, it's reasonable to read this Court's statements there as, in fact, saying something that does state a proposition because earlier it had defined it as the taking of a vehicle, and then it specifically put the prohibited conduct in the context of the taking of the victim's vehicle. Of the facts of this case, which is the victim, right? It was the facts of that case, yes. And we also said in Gurule that the subject of motivation in acquiring possession of controlling of the victim's vehicle is irrelevant. I don't know if that was Gurule or Payne. Is it Payne? I'm sorry. Payne certainly says that. Gurule may reference Payne. But Payne, in saying that, was making the point that there doesn't have to be a permanent deprivation, that any deprivation, any infringement will do. Well, Gurule argued, you know, I was just going to use it as a getaway car. I didn't have any intent to keep it. And we said that doesn't matter. And when in Gurule they actually cite the elements of the carjacking statute, there's nothing in there about that you have to have intended to steal it. It's certainly true that a common law had to be the felonious taking or the taking with the intent to permanently deprive and had to be the property of another. Those are elements that are not specifically in this statute. And Carter versus the United States, the carjacking, the bank robbery case that we cite in the footnote in the reply brief, does make the point that the importation of the common law is kind of term by term analysis. And so we're relying, as we did in the open brief, on the taking element. But our point now is that the taking element is infused by Gurule, Payne, where, again, they talk about the stealing of the car, the motive for the stealing of the car. And one doesn't, being irrelevant, and one doesn't steal one's own car. And it's the same in Holloway where the Supreme Court used stealing. A couple of paragraphs after putting it in terms of taking. And they could easily have said taking if they wanted to, but they actually used stealing. Now, again, that was the facts of that case as well. But I think that it shows that it confirms what the common sense proposition is, which is that one can't steal their own car. And that is reflected. It's furthered by the purpose of the statute. The carjacking provision was added as part of an anti-car theft act. And this common law related argument that you're making, and I do want to get back to your self-defense position, but this common law related argument that you're making, that argument, did you make that in the district court? We argued that the taking element wasn't satisfied. This importation of the common law as justifying and supporting your argument that in a situation where one says that they don't own the vehicle, you don't satisfy the elements of the offense. That argument. The exact argument you're making now on appeal, did you make that argument in the district court? And if so, where? I'm not sure that we did. I mean, no, the government hasn't argued that we didn't make the common law argument. I hear you, but that's not what I asked. I know it's not, but there can be a waiver of the waiver or a waiver of forfeiture. Maybe a forfeiture of a forfeiture, I don't know. And again, what we're arguing, given Carter versus the United States, is a little bit different, which is that yes, there is some indication in the common law from Blackstone that taking is about, has this, can be negated by a good faith belief, and Blackstone talks about taking and feloniously and intent to deprive as separate. But mostly it's how this court and the Supreme Court have spoken about the taking element and how that reflects that you can't steal your own property, so therefore the fact that you in good faith believe it's your property would negate the mental state. And if it is your property, it's not carjacking at all, and that is consistent with the common law. So that's more what we're arguing right now. May I shift you for a second to the self-defense argument? You were talking about the sort of factual basis for whether there was an argument for the self-defense and whether that you could have asserted it. The government also makes sort of a categorical legal argument to the effect that self-defense is not a viable defense in the context of the carjacking statute resulting in death. And I'd like to hear you, you know, why isn't that reasonable? And particularly, why isn't it correct? More to the point. And particularly if you would address the analogy I think the government makes to 924C in terms of talking about that statute. I don't have in mind exactly what the reference to 924C is. I may be misremembering, but let's talk about specifically their point that it's not a viable defense, period. Well, what I understand them to be arguing is that while the carjacking is underway and while it's still ongoing, you can't have self-defense. And what we're saying is he had withdrawn from it. The danger from the carjacking at the house had dissipated. There was not at the house an ongoing carjacking. Anything that was happening with respect to the carjacking was happening off-site. It was happening by Mr. Bush. It wasn't happening by Mr. Barnes or anybody with him at the house. I'm sorry to cut you off, but there are two discreet things that one could be arguing here. One is that on the facts that are here, they do not either justify a self-defense instruction or not. That's one argument. The other is you aren't entitled to any, under any set of facts, you are not entitled to a self-defense instruction. This statute does not allow for a self-defense defense. I understood the argument that the government would be making that argument too, and that's the one I'm asking you to respond to. And I understood it to be that it has to have the carjacking be ongoing, and my point is that the carjacking certainly at the house is not ongoing. Well, that goes to the facts of this case and whether, in fact, the facts would justify the defense, right? No, because I think if, for example, this was the next day, you couldn't say, well, he could shoot somebody to, Swenson could shoot somebody who had been involved in the carjacking. Our point is that there is a basis for the jury to believe that the carjacking at the house had ended. He had withdrawn from it. If there was anything going on at the carjacking, anything that allowed Mr. Swenson to use force, it was as to Mr. Bush off the property. It wasn't as to Mr. Barnes and the people with him at the house. There is a basis for the jury to believe that the action was in self-defense. Therefore, I would have been entitled to a jury instruction. That's one theory. The point I'm making is aren't there certain statutes that you just aren't entitled to a self-defense instruction too? If the carjacking were still ongoing, he couldn't argue self-defense. That goes to the facts of what was going on here. I'm saying that just by virtue of the nature of resulting in death, that this statute did not permit, period, a self-defense instruction. It was not a viable instruction in the context of what that statute. But I think it has to be while the carjacking is going on. There was nothing at the house of an ongoing carjacking. That's where the force was used and that's when it was used. That's why the dissipation of the danger and the withdrawal go kind of hand-in-hand with the availability of the defense. Because there was sufficient evidence of withdrawal and dissipation of the danger, the court should have instructed on self-defense as it did on count five, the 924C and 924J, on which the jury hung. And we'd ask the court to vacate Mr. Barnes' conviction on the carjacking count and for the other reasons about the fact you can't carjack your own car on that count and the conspiracy count as well. And I'll save the remaining 15 seconds. Thank you. Thank you. Good morning, Your Honors. May it please the court. My name is Emil Keeney and I'm with the U.S. Attorney's Office in Albuquerque. And I'll start by addressing the self-defense claim, unless you want to go to the first claim. I'm all about self-defense. And if you would explain to me, am I misremembering? I thought you made a 924C analogy in your brief in terms of supporting the view that self-defense is not a viable defense to this statute. That's correct. We cited the case United States v. Johnson from this court in which that was the case where these gentlemen defendants had a drug operation going in rural Oklahoma. And they had firearms with them. And they said, when federal agents approached, they said, we don't know who those guys are. So we're not using them for our drug operation. We're using them as self-defense. And what this court said is, the evidence is sufficient to show that those guns are being used for your drug operation. You were using them in connection with that. And after that, it doesn't matter why you say you used them or what was in your mind when you used them. You shouldn't have those at all. And that is the argument we're making. And let me play that out to make sure I understand that. What I understand that argument to be is a statement that because of the nature of the statute and what it penalizes, no set of facts would justify you under this statute to a self-defense instruction. I mean, that's different than saying, oh, had the danger dissipated, had the crime dissipated? One can talk about whether a reasonable jury would find that. That's one argument. The other argument is, as in this 924C idea, I don't care why you had the gun. You could never get a self-defense instruction in that statute. Is that an argument that you're making? Because that's what I saw you to be making. There's two discreet arguments here. Those are two arguments. We are arguing the statutory argument that you just described. And then if you didn't accept that, my other argument is that the evidence wasn't sufficient to support or allow the defense. And that argument that there's no self-defense available, defense available at all in carjacking, was specifically rejected by the Fifth Circuit, wasn't it? Well, that wasn't the issue in the Fifth Circuit. We cited that in a footnote. The parties appear to have assumed that self-defense would be a viable defense. And it just, the legal issue that we're raising here, for whatever reason, it just wasn't raised or discussed in that case. So what we're saying here is that once you've committed the basic elements of carjacking, and what I mean by that is the elements that are in the prefatory paragraph. Once you've committed a carjacking, what the statute then says, if death results, and this court has said that's a but-for cause, and that's a strict liability element. This court said that in Lowell and with a similar statute in Moya. I'm sorry, Your Honor, were you? No, so I'm trying to steal a car. Somebody confronts me. I turn around and run. I abandon my activity, and they start shooting me. I turn around and shoot back. There's no possibility of a self-defense. No, not because that's but-for causation. The whole reason where that person is shooting at you is because you committed a carjacking. You shouldn't be committing a carjacking. What Congress is saying here, we think, is that this activity is so dangerous that if the carjacking is a but-for cause of the death, you are responsible. You shouldn't have been doing that in the first place. And I think that applies here, too. What we have here, I'm sorry, Your Honor, were you? That would be an issue of first impression for us to decide that. That's correct, that precise issue. And it would be the first case from a circuit. If the Fifth Circuit didn't decide that, or actually didn't reject it, it would be the First Circuit to have ruled that. That's correct. That's correct. I think that's because the vast majority of carjackings occur in situations where there's not even, I won't say a viable, or even an articulable claim of self-defense. So I think it's a product of the way these crimes normally occur, and this is an atypical carjacking. So if we don't go that route and we are looking at self-defense in terms of whether Mr. Barnes withdrew from the carjacking, is there a factual dispute there? I mean, I've watched those videos. It's difficult to see what's going on. But the argument is that he was retreating. He was done when he was then being shot at, and he responded. Yeah, that is his argument. And our argument response is a jury withdrawal isn't just physically starting to remove yourself from the scene. It's abandoning the enterprise. And he's not abandoning the enterprise. He never does anything from which a jury could say Mr. Barnes is no longer committing carjacking. Now, he does say earlier, two and a half minutes earlier, when Mr. Swenson came out on his porch. You probably saw that on the video. He said, I told him that we would be leaving. But he makes no move to leave, and Mr. Bush, his co-conspirator, goes right back to starting to try to take the motorcycle again. And then after they leave, after the truck leaves, the Barnes and the other two leave, they circle around and take the motorcycle. Mr. Barnes, and he admitted this in his testimony, said, we got out and loaded up the motorcycle. If he's not committing the carjacking, he would have said, I'm not part of this anymore. I'm not helping anymore. I'm not doing any of this. And then they took it back to his house and left the motorcycle there. So he's providing a place to keep the motorcycle afterward. At no stage does he abandon the enterprise. And no jury could reasonably fight that. That's our position. Okay, I thought you were going to ask me something more. On the, I'm sorry, the taking element claim. Ownership of the vehicle is not relevant to the taking element. What this court and other courts, and we've cited a number of other circuits, when they talk about the taking element, they refer to it as the physical acquisition of control over the vehicle. Where intent comes in, where Mr. Barnes' beliefs about ownership of the vehicle comes in, it's relevant to the intent element, to the conditional intent element. And the reason for that is because it's unlikely, if he did believe that, look, we have permission to go take this bike and it belongs to my friend, Mr. Bush, you know, it's unlikely that someone in that situation would be contemplating the, that they're going to use violence and need to kill or hurt someone to take the bicycle. I mean, to take the motorcycle. So, and the district court instructed the jury on that defense. If you look at volume one of the record, page 854, the jury was instructed that Mr. Barnes' defense is because he did not know the other participants were taking the motorcycle without permission or might take the motorcycle by force and violence or intimidation. He didn't commit carjacking, conspiracy, and so forth. And then in the last paragraph of that instruction, it says, if you find that Defendant Barnes did not knowingly or intentionally join any conspiracy to commit carjacking, you must find him not guilty of counts one, two, and five. So he received that defense. The jury didn't accept it. So even if there were some doubt in your minds about the meaning of the taking element, it doesn't matter because the jury didn't buy his defense to begin with. And we know that because it found him guilty of count one. Unless the court has any other questions, that's really all I had to say about, well, about the taking claim two. And if you have a doubt about everything I've just said about the taking element, he actually waived this claim two because during the jury instruction conference he said, I don't like the law, but this instruction is clear and I don't object. Well, you know, if you just look at that statement and you don't look at it in the context of the prior discussions on this issue, you could think that. But when you go back and you look, this was stated after he had made repeated objections. And it was almost, I did not see it as a complete capitulation. I thought he was just saying, I've been beating my head against this brick wall for a while and I don't have any objections to the way you have framed this instruction and I'm going to abide by your ruling. I'm not sure. Maybe I'm being too generous, but I didn't really think there was a waiver there. Well, I think that the earlier discussions of that had occurred in, there's court-made rulings in June and August of 21 or 22. I forget the year in which the trial was, but it was those months. And then in the beginning of October, the defendant also submitted jury instructions. And he didn't submit a jury instruction with his taking the theory. He moved his defense to the intent theory. And this is the instruction that the district court gave that I just read from is the one, I think almost identical to the one the defendant submitted. And then he made those remarks. I think if he had said, Your Honor, I understand you've ruled against me several times. I understand your view of the law, but I still object to this. I think he could have said that. But if you don't agree with me on the waiver, I think my arguments on the merits should still carry the day. I will take another look at it. When you're in trial, you always have to gauge how many times I can make the same objection to the same judge. That's true. What I would tell you is my waiver argument, I think I can make it in good faith, but I think it's not as strong as my merits arguments, for sure. Counsel, before you sit down, could you address your view of the role of the common law here in the take definition? Well, I think the common law is kind of, I quoted from Blackstone, there were some passage in there that lent support to Mr. Barnes' argument now. But a lot of the other treatises and sources that we've cited really refer to the intent to, really refer to ownership of the property in terms of intent to steal. And that's the one, that appears to be what the federal circuits have done as well. And if Congress had wanted to adopt the intent to steal into this statute, it could have done that. Because in the bankrupt larceny statute, which we've cited, it's 2113B, there Congress refers, you can't commit this crime without, it makes intent to steal or purloin an element of that offense. And so it could have done so here. So I think what Congress has done here is, certainly Congress is acting against the background of the common law. I think most of the common law sources support our position. And Congress has divided, I think what Congress has done here is rational. It's made the taking the actus reus and the intent the mens rea. And if that's where any beliefs about ownership or what we were doing on our way, what we were thinking on our way over to Mr. Swenson's house goes with the intent element. Thank you. Unless there's any other questions, I would ask this Court to affirm the judgment. Thank you, Counselor. Thank you very much. We've got one minute. Thank you. Very briefly on Johnson's, obviously, my lack of memory in terms of it being a 924C case. But in that case, the offense was still ongoing. They were still manufacturing the drugs with the guns. So it was something that happened during the course of it. Here, Mr. Barnes, if Mr. Barnes withdrew and communicated that and the danger had dissipated at the house, there was nothing ongoing about the carjacking at the house. And it doesn't give Mr. It doesn't give the right to use force against people who have withdrawn and where the danger has dissipated. But the argument was that it was a but that the but for causation is what's at play here, which means that even if he deemed even if Mr. Barnes deemed it all to be over, the whole the idea of the shooting, the death would not have occurred but for the initial carjacking, whether one could claim the initial carjacking was over or not, the but for causation would have resulted in the death. And that would be all that would be necessary. Well, if you take that logically to the extreme, it would allow Mr. Swenson to the next day to come and shoot people who had been involved in the carjacking. And that's clearly not right. So I think it has to be while the carjacking is ongoing as to the people involved. And if it's ongoing offsite with somebody else, force can be used there, but it's not foreseeable consequence of carjacking that there'd be a shooting of people who had communicated or attempt to withdraw and where the danger at the place of the shooting had dissipated. And again, we'd ask the court to vacate both counts one and count two. Thank you, Mr. Pinkus. Thank you, counsel. Case is submitted.